```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/20/20
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>    Plaintiff,<br><br>    v.<br><br>FIRST DATA MERCHANT SERVICES LLC,<br>a limited liability company, and<br><br>CHI W. KO, a/k/a Vincent Ko,<br><br>    Defendants. | Case No.   1:20-cv-3867<br><br><br>**STIPULATED ORDER** |

## STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO CHI W. KO

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") against Defendant Chi W. Ko ("Ko") pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101–6108. The Commission and Defendant stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment, ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendant participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the Telemarketing Act, 15 U.S.C. §§ 6101–6108, and the Telemarketing Sales Rule ("TSR") 16 C.F.R. Part 310, by processing or arranging for processing charges to consumers' credit and debit cards for Defendant's Clients.

3.     Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.   Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.     Defendant waives any claim that he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear his own costs and attorney fees.

5.     Defendant and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     "**ACH Debit**" means any completed or attempted debit to a Person's account at a Financial Institution that is processed electronically through the Automated Clearing House Network.

B.      **"Acquirer"** means a business organization, Financial Institution, or an agent of a business organization or Financial Institution that has authority from an organization that operates or licenses a credit card system (e.g. VISA, Mastercard, American Express, and Discover) to authorize Merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

C.      **"Card-Not-Present Transaction"** means a debit or credit card transaction whereby the Person's debit or credit card is not physically swiped, scanned, or imprinted.

D.      **"Chargeback Rate"** means the proportion (expressed as a percentage) of Chargebacks out of the total number of credit or debit card sales transactions.

E.      **"Chargeback"** means a procedure whereby an issuing bank or other Financial Institution charges all or part of an amount of a Person's credit or debit card transaction back to the acquiring or merchant bank.

F.      **"Client"** means (a) any Person who obtains, directly or indirectly, from Defendant a Merchant Account or (b) any Person to whom Defendant provides Payment Processing services.

G.      **"Covered Client"** means any Client who offers to sell, sells, promotes, or markets the following goods or services: bidding fee auctions; cash advances; charities; multi-level marketing or pyramid schemes; nutraceuticals without a Negative Option Feature; payment aggregators; third-party payment processors; and computer technical support services.

H.     "**Credit Card Laundering**" means:

1.     Presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant;

2.     Employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or

3.     Obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

I.     "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

J.     "**Defendant**" means Chi W. Ko, a/k/a Chi Ko, Vincent W. Ko, or Vincent Ko.

K.     "**Financial Institution**" means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k)).   An institution that is significantly engaged in financial activities is a Financial Institution.

L.     "**High Risk Client**" means any Client that (a) on an annual basis, whether measured by a single Merchant Account or by the aggregate of all Merchant Accounts held by the Client, processes more than fifteen percent (15%) Card-Not-Present Transactions; or (b) more than two

hundred thousand dollars ($200,000) in total Card-Not-Present Transactions on an annual basis; or (c) is a Covered Client.

M.      "**Independent Sales Organization**" or "**ISO**" means any Person that (a) enters into an agreement or contract with a Payment Processor, Acquirer or Financial Institution to sell or market Payment Processing services to a Merchant; (b) matches, arranges for, or refers Merchants to a Payment Processor or Acquirer for Payment Processing services, or that matches, arranges for, or refers a Payment Processor or Acquirer to Merchants for Payment Processing services; or (c) is registered as an ISO or merchant service provider ("MSP") with VISA, Mastercard, or any credit card association.

N.      "**Merchant**" means any Person engaged in the sale or marketing of any goods or services or a charitable contribution, including any Person who applies for ISO or Payment Processing services.

O.      "**Merchant Account**" means any account with an Acquirer or other Financial Institution, service provider, Payment Processor, ISO, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

P.      "**Money Making Opportunity**" means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

Q.      "**Negative Option Feature**" means, in an offer or agreement to sell or provide any product or service, a provision under which the consumer's silence or failure to take an

affirmative action to reject products or services or to cancel the agreement is interpreted by the Client, seller or Merchant as acceptance of the offer.   Offers or agreements with Negative Option Features include, but are not limited to:   (a) free or introductory price trial offers in which the consumer receives a product or service for free or at a nominal or introductory price for an initial period and will incur an obligation to pay or pay a greater amount for the product or service if he or she does not take affirmative action to cancel, reject, or return the product or service before the end of that period; (b) continuity plans in which, subsequent to the consumer's agreement to the plan, the seller or provider automatically ships products to a consumer unless the consumer notifies the seller or provider within a certain time not to ship the products; and (c) automatic renewal plans in which the seller or provider automatically renews the agreement and charges the consumer unless the consumer cancels before the renewal.

R.      "**Outbound Telemarketing**" means any plan, program, or campaign that is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call initiated by a Person other than the consumer, whether or not covered by the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

S.      **"Payment Processing"** means transmitting sales transaction data on behalf of a Merchant or providing a Person, directly or indirectly, with the means used to charge or debit accounts through the use of any payment method or mechanism, including, but not limited to, credit cards, debit cards, prepaid cards, stored value cards, ACH Debits, and Remotely Created Payment Orders. Whether accomplished through the use of software or otherwise, Payment Processing

includes, among other things: (a) reviewing and approving Merchant applications for payment processing services; (b) transmitting sales transaction data or providing the means to transmit sales transaction data from Merchants to Acquirers, Payment Processors, ISOs, or other Financial Institutions; (c) clearing, settling, or distributing proceeds of sales transactions from Acquirers or Financial Institutions to Merchants; (d) processing Chargebacks or returned Remotely Created Payment Orders or ACH Debits; or (e) signing a merchant acceptance agreement on behalf of an Acquirer, or receiving settlement of transaction proceeds from an Acquirer, on behalf of a sponsored Merchant.

T.     **"Payment Processor"** means any Person providing Payment Processing services in connection with another Person's sale of goods or services, or in connection with any charitable donation.

U.     **"Person"** means any natural person or any entity, corporation, partnership, or association of persons.

V.     **"Remotely Created Payment Order"** or **"RCPO"** means a payment instruction or order, whether created in electronic or paper format, drawn on a payer's account that is initiated or created by or on behalf of the payee, and which is deposited into or cleared through the check clearing system. For purposes of this definition, an account includes any financial account or credit or other arrangement that allows checks, payment instructions, or orders to be drawn against it that are payable by, through, or at a bank.

W.     **"Sales Agent"** means a Person that matches, arranges, or refers prospective Clients or

Clients to a Payment Processor or ISO for Payment Processing, but does not hold any contractual liability in the event of losses related to the Payment Processing activities conducted by or on behalf of Clients. As such, a Sales Agent may be involved in recommending a particular Payment Processor or ISO to a prospective Client, forwarding to the Payment Processor or ISO a prospective Client's or Client's merchant application, or negotiating rates and fees charged by a Payment Processor or ISO, but a Sales Agent may not be involved in any Payment Processing and may not act as an ISO.

X.     **"Telemarketing"** means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

Y.     **"Total Return Rate"** means the proportion (expressed as a percentage) of all ACH Debit or RCPO transactions that are returned through the banking system for any reason, whether before or after payment, out of the total number of such attempted transactions, calculated separately for each transaction type.

**I.**

## BAN ON PAYMENT PROCESSING OR ACTING AS AN ISO OR SALES AGENT FOR CERTAIN MERCHANT CATEGORIES

IT IS ORDERED that Defendant is permanently restrained and enjoined from Payment Processing or acting as an ISO or Sales Agent, whether directly or through an intermediary, and from assisting others engaged in Payment Processing, whether acting directly or through an intermediary, for any Person:

A.    Offering to sell, selling, promoting or marketing the following goods or services:

1. Money Making Opportunities;

2. credit repair;

3. credit card protection;

4. identity theft protection;

5. debt collection, debt counseling, debt settlement, or debt consolidation;

6. mortgage or loan modification;

7. government grants;

8. timeshare resale; or

9. nutraceuticals with a Negative Option Feature;

B.    Engaged in Outbound Telemarketing;

C.    Listed on the Mastercard Member Alert to Control High-Risk Merchants (MATCH) list for any of the following reasons: excessive Chargebacks or fraud, fraud conviction, laundering, identification as a Questionable Merchant per the Mastercard Questionable Merchant Audit Program, merchant collusion, illegal transactions, or identity theft;

D.    Registered as, or qualifies for registration as, a high risk-merchant type according to Mastercard or Visa's rules and regulations; or

E.    That is a Covered Client subject to an Order from any lawsuit brought by the Commission or any other state or federal law enforcement agency relating to consumer protection or telemarketing laws or regulations , provided that Defendant received notice of the Order or the Order is publicly available.

Page 9 of 29

*Provided, however*, that (i) this Section shall not prohibit Defendant from owning or being employed by a business that provides hardware or software technology services, including point of sale hardware, software or gateway services, to any Acquirer, Financial Institution, Payment Processor, ISO or Sales Agent, provided that Defendant is not involved in the underwriting, screening, or risk assessment of any High Risk Client or Person falling within subsections A-E of this Section; (ii) this Section shall not prohibit Defendant from being an officer, employee, or contractor as part of Defendant's employment by a publicly traded Acquirer, Financial Institution, Payment Processor, ISO, or Sales Agent in which Defendant does not own more than one percent of the outstanding common shares, provided that Defendant is not involved in the underwriting, screening, or risk assessment of any High Risk Client or Person falling within subsections A-E of this Order.

## II.

## PROHIBITION ON CREDIT CARD LAUNDERING

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from Credit Card Laundering.

## III.

## PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.  Making, or assisting others in making, expressly or by implication, any false or misleading statement in order to obtain Payment Processing services; and

B.  Engaging in any tactics to avoid fraud and risk monitoring programs established by any Financial Institution, Acquirer, or the operators of any payment system, including, but not limited to, balancing or distributing sales transaction volume or sales transaction activity among multiple Merchant Accounts or merchant billing descriptors; splitting a single sales transaction into multiple smaller transactions; or using shell companies to apply for additional Merchant Accounts.

## IV.

### PROHIBITION AGAINST ASSISTING AND FACILITATING

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from providing substantial assistance or support to any Person that they know, or should know, is engaged in:

A.  Misrepresenting, expressly or by implication, any materials aspect of the performance, efficacy, nature, or central characteristics of any goods or services;

B.  Misrepresenting, expressly or by implication, any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policies;

C.  The unauthorized debiting or charging of consumer bank or credit card accounts; or

D.      Any deceptive, unfair, or abusive act or practice prohibited by Section 5 of the FTC

Act or by the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

## V.

## SCREENING OF PROSPECTIVE HIGH RISK CLIENTS

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees,

and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, are permanently

restrained and enjoined from participating in Payment Processing or acting as an ISO or Sales

Agent for any prospective High Risk Client without first engaging in a reasonable screening of

the prospective High Risk Client to determine whether the prospective High Risk Client's

business practices are, or are likely to be, deceptive or unfair within the meaning of Section 5 of

the FTC Act, or violation of the TSR.   Such reasonable screening shall include, but not be limited

to:

A.      Obtaining from each prospective High Risk Client, including the principal(s)

and controlling Person(s) of the entity, any Person(s) with a majority ownership interest in the

entity, and any corporate name, trade name, fictitious name or aliases under which such

Person(s) conduct or have conducted business:

1.      A description of the nature of the prospective High Risk Client's

business, including describing the nature of the goods and services sold and methods of sale, for

which the prospective High Risk Client seeks Payment Processing services;

2.      The name of the principal(s) and controlling Person(s) of the entity, and

Person(s) with a majority ownership interest in the entity;

3.     A list of all business and trade names, fictitious names, DBAs, and Internet websites under or through which the prospective High Risk Client has marketed or intends to market the goods and services for which the prospective High Risk Client seeks Payment Processing services;

4.     Each physical address at which the prospective High Risk Client has conducted business or will conduct the business(es) identified pursuant to subsection (1) of this Section V.A;

5.     The name and address of every Acquirer, originating depository Financial Institution (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions to such merchant), and Payment Processor used by the prospective High Risk Client during the preceding two years, and all merchant identification numbers used by any such banks or Payment Processors in connection with the prospective High Risk Client;

6.     The prospective High Risk Client's past Chargeback Rate and Total Return Rate (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions) for the preceding three months, or for the preceding six months if the High Risk Client is a covered Client, and estimates of future Chargeback Rates and Total Return Rates (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions to such merchant);

7.     The names of trade and bank references; and

8.     Whether the prospective High Risk Client, including the principal(s) and controlling Person(s) of the entity, any Person(s) with a majority ownership interest in the entity,

and any corporate name, trade name, fictitious name or aliases under which such Person(s) conduct
or have conducted business, has ever been:

       i.     placed in a payment card association's chargeback monitoring
program; or

      ii.     the subject of a complaint filed by the Commission or any other
state or federal law enforcement agency;

     B.    Taking reasonable steps to assess the accuracy of the information provided pursuant
to Sections V.A of this Order, including but not limited to: reviewing the Internet websites used by
the prospective High Risk Client to market its goods or services; obtaining and reviewing copies
of monthly Payment Processing statements issued by any bank, ISO, Sales Agent, Acquirer, or
Payment Processor used by the High Risk Client during the preceding six (6) months; and
obtaining and reviewing all current marketing materials for each good or service related to the
offer for which Defendant would provide the prospective High Risk Client with Payment
Processing, ISO, or Sales Agent services.  The purpose of such steps is to determine whether the
prospective High Risk Client is engaged in any of the following acts or practices, in which case
Defendant shall not provide Payment Processing or act as an ISO or Sales Agent for the prospective
High Risk Client:

     1.    Failing to clearly and conspicuously disclose all products and services that
are sold in conjunction with the offered product or service, and the total cost to purchase, receive,
or use, any products or services that are the subject of the sales offer;

     2.    Misrepresenting any material aspect of the performance, efficacy, nature,
or central characteristics of goods or services that are the subject of the sales offer;

3. Failing to clearly and conspicuously disclose all material terms and conditions of an offer;

4. Misrepresenting, expressly or by implication, any material aspect of the prospective High Risk Client's refund, cancellation, exchange, or repurchase policies; and

5. Causing billing information to be submitted for payment without the customer's express authorization.

## VI.

## MONITORING OF HIGH RISK CLIENTS

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with Payment Processing or acting as an ISO or Sales Agent, are permanently restrained and enjoined from:

A. Failing to monitor the sales activity of all current Clients to identify Clients that should be designated as High Risk Clients requiring additional screening pursuant to Section V of this Order, and for those clients that become designated as High Risk, failing to complete the reasonable screening process described in Section V of the Order within a one-month period;

B. Failing to monitor each High Risk Client's transactions to determine whether the High Risk Client is engaged in practices that are deceptive or unfair in violation of Section 5 of the FTC Act. Such monitoring shall include, but not be limited to, regularly reviewing High

Risk Clients' Internet websites including from an IP address that is not associated with Defendant, regularly reviewing each High Risk Client's Chargeback Rates and Total Return Rates (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions), and reasons provided for these rates, as well as examining any unusual or suspect transaction patterns, values, and volume;

      C.      Failing to calculate and update at least on a monthly basis for each High Risk Client the Chargeback Rate and Total Return Rate (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions). The Chargeback Rate and Total Return Rate shall be calculated separately for each payment mechanism processed, including ACH Debits, credit card transactions, and RCPOs. For any High Risk Client with multiple processing accounts, the calculation of the Chargeback Rate and Total Return Rate shall be made for each of the High Risk Client's individual processing accounts, and in the aggregate for each High Risk Client;

      D.      Failing to immediately stop processing sales transactions and, as soon as practical but in no more than five (5) days, close all processing accounts for:

      1.      Any Covered Client whose Total Return Rate exceeds two and one-half percent (2.5%) and whose total number of ACH Debit or RCPO returned transactions in any month exceeds (20) transactions;

      2.     Any Covered Client whose monthly Chargeback Rate exceeds one percent (1%) and whose total number of chargebacks exceeds forty (40) per month in two of the past six months; and

      3.     Any Covered Client engaged in tactics to avoid fraud and risk monitoring programs established by any Financial Institution, Acquirer, or the operators of any payment system, including, but not limited to, balancing or distributing sales transaction volume or sales transaction activity among multiple Merchant Accounts or merchant billing descriptors; splitting a single sales transaction into multiple smaller transactions, or using shell companies to apply for additional Merchant Accounts.

      E.     Failing to immediately conduct a reasonable investigation of the cause of the Total Return Rates (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions) or Chargeback Rates for:

      1.     Any High Risk Client, excluding Covered Clients, whose Total Return Rate exceeds two and one-half percent (2.5%) and whose total number of ACH Debit or RCPO returned transactions and whose total number exceeds forty (40) in any month; and

      2.     Any High Risk Client, excluding Covered Clients, whose monthly Chargeback Rate exceeds one percent (1%) and whose total number of chargebacks exceeds forty (40) in two of the past six months.

      3.     Reasonable investigation as defined in this section includes, but is not limited to: verifying and updating the truth and accuracy of information gathered in compliance

with Section VI of this Order and any other advertising of the High Risk Client; confirming that the High Risk Client has obtained required consumer authorizations for the transactions; contacting Financial Institutions and Better Business Bureaus to gather detailed information, including complaints and other relevant information, regarding the High Risk Client; reviewing from an IP address that is not associated with Defendant the Internet websites used by the High Risk Client to market its goods and services; searching publicly available sources for legal actions taken by the Commission or other state or federal law enforcement agencies against the High Risk Client; and conducting "test" shopping to determine the High Risk Client's sales practices, where possible.

4.      Within 60 days of commencing the investigation, Defendant shall stop processing sales transactions and close all processing accounts for any investigated High Risk Client unless Defendant drafts a written report establishing facts that demonstrate, by clear and convincing evidence, that the High Risk Client's business practices related to the offer(s) for which Defendant provides Payment Processing are not deceptive or unfair in violation of Section 5 of the FTC Act or in violation of the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310.

F.      Failing to immediately stop processing sales transactions and close all processing accounts for any High Risk Client that Defendant knows or should know is engaged in tactics to avoid fraud and risk monitoring programs established by any Financial Institution, Acquirer, or the operators of any payment system, including, but not limited t0

balancing or distributing sales transaction volume or sales transaction activity among multiple Merchant Accounts or merchant billing descriptors; splitting a single sales transaction into multiple smaller transactions, or using shell companies to apply for additional Merchant Accounts.

## VII.

## MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.       Judgment in the amount of Two Hundred Seventy Thousand Three Hundred Seventy-Three Dollars and Seventy Cents ($270,373.70) is entered in favor of the Commission against Defendant.

B.       Defendant is ordered to pay to the Commission Two Hundred Seventy Thousand Three Hundred Seventy-Three Dollars and Seventy Cents ($270,373.70), which, as Defendant stipulates, his undersigned counsel holds in escrow for no purpose other than payment to the Commission.   Such payment must be made within seven (7) days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

## VIII.

## ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.       Defendant relinquishes dominion and all legal and equitable right, title, and

interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Defendant acknowledges that his Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendant must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.

Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## IX.

## CONSUMER INFORMATION

IT IS FURTHER ORDERED that Defendant, and Defendant's officers, agents, employees, representatives, and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.   If a representative of the Commission requests in writing any information related to redress, Defendant must provide it, in the form prescribed by the Commission, within 14 days.

## X.

## COOPERATION

IT IS FURTHER ORDERED that Defendant must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.   Defendant must provide truthful and complete information, evidence, and testimony.   Defendant must appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## XI.

### ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtains acknowledgments of receipt of this Order:

A.      Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For twenty (20) years after entry of this Order, Defendant, for any business that Defendant, individually or collectively with any other Defendant, is the majority owner or directly or indirectly controls must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC members and managers; (2) all employees, agents, and representatives having managerial responsibilities for conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within seven (7) days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XII.

### COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant makes timely submissions to the

Commission:

A.      One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Defendant must:   (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered and the involvement of any other Defendant (which Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail Defendant's involvement in each such business, including title, role, responsibilities,

participation, authority, control, and any ownership.

B.      For 20 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

> 1.      Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:   creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

> 2.      Additionally, Defendant must report any change in:   (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Defendant performs services whether as an employee or otherwise and any entity in which Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by

concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. First Data Merchant Services LLC, Matter No. 1623180.

## XIII.

### RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant, for any business that he, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold;

B.      Personnel records showing, for each person providing services related to the subject matter of the Order, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response; and

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission.

## XIV.

### COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, Defendant must:   submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.   The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Defendant.   Defendant must permit representatives of the Commission to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any

individual or entity affiliated with Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XV.

### RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

SO ORDERED this **20**th day of __May__ , 2020.

Louis L. Stanton

UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

Date:  5/19/2020

Nicholas M. May
Anna M. Burns
Michael A. Boutros
Federal Trade Commission
225 Peachtree Street, Suite 1500
Atlanta, GA 30303
(404) 656-1360 (May); nmay@ftc.gov
(404) 656-1350 (Burns); aburns@ftc.gov
(404) 656-1351 (Boutros); mboutros@ftc.gov

**FOR DEFENDANT CHI W. KO a/k/a Vincent Ko:**

_____     Date: 4/20/20

Jim Walden
(Counsel for Chi W. Ko a/k/a Vincent Ko)
Walden Macht & Haran LLP
1 Battery Park Plaza, 34th Floor
New York, NY 10004
(212) 335-2964
jwalden@whlaw.com

_____     Date: 3/31/2020

Mitchell C. Shapiro
(Co-counsel for Chi W. Ko a/k/a Vincent Ko)
MCSHAPIRO LAW GROUP PC
15 Cutter Mill Road, #207
Great Neck, NY 11021
(917) 446-3628
mcs@mcshapirolaw.com

**DEFENDANT CHI W. KO a/k/a Vincent Ko:**

_____     Date: 3/31/2020

Chi W. Ko

Page 29 of 29